**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Kelly Tarantino, individually and on behalf of all others similarly situated, | x : : Case No. |
| Plaintiff, | : : |
| v. | : : |
| | : : **CLASS ACTION** |
| The Kraft Heinz Company a/k/a Kraft Heinz Foods Company, | : **COMPLAINT** : : **JURY TRIAL DEMANDED** |
| | : : |
| Defendant. | : : |
| | : x |

Plaintiff, Kelly Tarantino (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on her personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of The Kraft Heinz Company a/k/a Kraft Heinz Foods Company ("Kraft" or "Defendant") with respect to the marketing and sales of Defendant's Kraft Mac & Cheese products throughout the State of New York and throughout the country (hereinafter the "Products").

2.      Defendant fails to disclose on the Products' packaging and labels (the one place that all consumers view when purchasing a product) that the Products contain "ortho-phthalates," also known as "phthalates[.]"

3.      Phthalates are dangerous and harmful chemicals when consumed, especially by pregnant women and children.

1

4.     Over the past few years, researchers have linked phthalates to asthma, attention-deficit hyperactivity disorder, breast cancer, obesity and type II diabetes, low IQ, neurodevelopmental issues, behavioral issues, autism spectrum disorders, altered reproductive development and male fertility issues.[1]

5.     Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers; however, public reports and articles (including in the recesses of Defendant's own website) reveal that the Kraft Mac & Cheese Products contain phthalates.

6.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  The packaging and labels include statements designed to appeal to health-conscious consumers such as "NO Artificial Flavors," "NO Artificial Preservatives," and "NO Artificial Dyes."

7.     However, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain phthalates.

8.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations and omissions that the Products are healthy when purchasing the Products.

9.     Plaintiff and Class Members paid a premium for the Products based upon their health-conscious marketing and advertising campaigns.

10.     Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are healthy and safe, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

---

[1] https://www.theguardian.com/lifeandstyle/2015/feb/10/phthalates-plastics-chemicals-research-analysis.

11.     Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the Magnuson-Moss Warranty Act.  Defendant also breached and continues to breach its warranties regarding the Products.  In addition, Defendant has been and continues to be unjustly enriched.

12.     Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

13.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food products that they and their family members consume.  Companies such as Defendant have capitalized on consumers' desire for healthy and safe products, and indeed consumers are willing to pay, and have paid, a premium for these products.

14.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains phthalates or other unsafe and unhealthy substances, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain on the Products' packaging or labels.

15.     When consumers look at the Products' packaging there is no mention of phthalates.  Phthalates are not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of phthalates in the Products.  Rather, Defendant's packaging is designed to appeal to health-conscious consumers with representations such as "NO Artificial Flavors," "NO Artificial Preservatives," and "NO Artificial Dyes."  This leads reasonable consumers to believe the Products are wholesome and healthy and do not contain dangerous chemicals like phthalates.

3

16.     This is especially troubling in light of Defendant's marketing towards children (which includes certain boxes having Disney's Frozen, Paw Patrol, unicorns, etc...).

17.     These representations and pictures are done to send the message to parents, caregivers, and their children (as well as all consumers) that Defendant's Products are healthy and safe food.

18.     However, contrary to these representations and pictures, the products contain dangerous and harmful phthalates.

19.     The phthalates enter the Products from the Product packaging and machines used to make the Products.  According to the CDC, "[P]eople are exposed to phthalates by eating and drinking foods that have been in contact with containers and products containing phthalates.[2]

20.     Despite knowing their Products contain dangerous and harmful phthalates, Defendant does not provide any information whatsoever on the Product label to inform the consumers of this.  Rather, after knowing of this significant hazard, Defendant began to bury this significant information on the FAQ section of its website, which is not easy to find by parents, caregivers, or consumers.  Notably, this information is not listed on the Product page itself, nor is there any warning or denotation on the packaging or labels to check the FAQ section of Defendant's website.  If someone did somehow know to check that FAQ section of Defendant's website, they would find the following:

**Should I be concerned about food and phthalates?**

Our goal at Kraft Mac & Cheese is to provide you with delicious meals your family loves and you can feel good about serving.

We take your questions about phthalates and food safety and quality very seriously because we know moms and dads trust Kraft

---

[2] https://www.cdc.gov/biomonitoring/Phthalates_FactSheet.html

Mac & Cheese as a quality, tasty, and safe food for the family.

We want you to know that we do not add phthalates to Kraft Mac & Cheese. We are extremely rigorous in our food safety processes. We study every aspect of our mac & cheese recipes and production to ensure it meets all regulatory requirements before bringing a product to your grocery store and into your home.

The safety of phthalates has been assessed by the US Food and Drug Administration and other authorities, such as the Centers for Disease Control. The trace levels found in the one limited test of mac & cheese are well below any level of concern. Hundreds of servings of mac & cheese would need to be consumed daily over an entire lifetime in order to exceed levels determined as safe.

The presence of phthalates is widespread and can be found in a variety of food and personal care products. Kraft Mac & Cheese is safe, and like others in the food industry, we are working to learn more about how trace amounts of phthalates may be introduced into certain products and if there is anything else we can do to reduce or eliminate them.

We want you to feel as good as we do about eating Kraft Mac & Cheese and serving it to our families. If you have any specific concerns, please don't hesitate to contact us[3]

21.     While the statements on the kraftmacandcheese.com website are buried in the Frequently Asked Questions section, they are nonetheless an admission by Defendant that it is both aware of the presence of phthalates in the Products, and aware that this is information a reasonable consumer would consider important.  Yet no information about the presence (or even risk) of phthalates in the Kraft Mac & Cheese Products is disclosed anywhere on the place every consumer looks at most – the Products' packaging.

---

[3] https://www.kraftmacandcheese.com/faq

5

22.    The phthalates enter the Products from the Product packaging and machines used to make the Products.  According to the CDC, "[P]eople are exposed to phthalates by eating and drinking foods that have been in contact with containers and products containing phthalates.[4]

23.    Despite Defendant's knowledge of phthalates in the Products, Defendant failed to provide any warning on the place that every consumer looks when purchasing a product--the packaging or labels--that the Products contain dangerous phthalates.

24.    In 2017, the Coalition for Safer Food Processing and Packaging (the "Coalition") a group of nonprofit consumer health and food safety advocacy organizations, published a study that tested, cheese powder in ten varieties of macaroni and cheese (the "Study").[5]   The Study concluded that phthalates were found in all 10 of the varieties tested.   The Study also concluded that "DEHP," the most widely restricted phthalate, was found more often and at a much higher average concentration than any other phthalate, among all the cheese products tested."[6]

25.    Although the Study did not publicly identify the brands for which the cheese powder was tested, given the results of the Study, the Coalition also wrote a public letter dated June 14, 2017 to the Chief Executive Officer of Kraft, asking it, as the leading U.S. seller of macaroni and cheese products, to "eliminate toxic industrial chemicals known as ortho-phthalates

---

[4] https://www.cdc.gov/biomonitoring/Phthalates_FactSheet.html

[5] *See* http://kleanupkraft.org /data-summary.pdf

[6] http://kleanupkraft.org/data-summary.pdf (last accessed April 2, 2021).  *See also* Report to the U.S. Consumer Product Safety Commission by the Chronic Hazard Advisory Panel on Phthalatesand Phthalate Alternatives, July 2014, U.S. Consumer Product Safety Commission, Directorate for Health Sciences, https://www.cpsc.gov /s3fs-public/CHAP-REPORT-With-Appendices.pdf (last accessed April 2, 2021), at 90 (CPSC states that regarding DEHP, which is not allowed in children's toys and child care products at levels greater than 0.1%, "[a] complete dataset suggeststhat exposure to DEHP in utero can induce adverse developmental changes to the male reproductive tract. Exposure to DEHP can also adversely affect many other organs such as the liver and thyroid.").

from your food products."[7]  The letter stated that the Coalition's testing had detected  phthalates in Kraft's products and that pregnant women and young children are "the most vulnerable."[8]  The letter mentioned that scientific findings show that pre-natal exposure to phthalates is highly dangerous to thefetus and leads to things such as ADHD, anti-social behavior, learning and memory problems, and genital birth defects in boys. [9]  The letter also stated that cumulative exposure to phthalates is of particular concern, and that safer alternatives are already commercially available."[10]

26.     In a public statement dated July 20, 2017, following the letter to Kraft's CEO, the Coalition further noted: "This serious public health risk stems from daily exposure to phthalates from *all* sources combined.  This is what's known as an unacceptable 'cumulative risk.'  Kraft asserts that the amount of phthalates in the Products we tested is many times 'lower than levels that scientific authorities have identified as acceptable.'  What Kraft didn't say is that the only acceptable  levels that exist apply to the *total* daily intake of phthalates from *all* sources combined, not from any single product.  With phthalates found in some dairy products, baked goods, oils, infant formula, fast food, consumer products, house dust - together, these daily exposures add up to too much."[17]  The letter also stated that the ten macaroni and cheese powders that were tested "had the highest levels of phthalates of the product items we tested."[11]

27.     Defendant's concealment was material and intentional because people are concerned with what is in the food that they are putting into their bodies, as well as parents and caregivers being concerned with what they are feeding to the children in their care.  Consumers

---

[7] http://kleanupkraft.org/kraft-phthalates-6-14-17.pdf
[8] *See id.*
[9] *See id.*
[10] *See id.*
[11] *Id.*

such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the Products' packaging and labels they buy.  Defendant knows that if it had not omitted that the Products contained phthalates and that the Products were not safe or healthy for consumption then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all) and Defendant wanted to increase sales/profits.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant Kraft Heinz Company a/k/a Kraft Heinz Foods Company is a citizen of Pennsylvania; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

29.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

30.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

31.     Plaintiff Kelly Tarantino is a citizen and resident of the State of New York.  During the applicable statute of limitations period, Plaintiff purchased Defendant's Products that contained phthalates.

32.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the Products containing phthalates, Plaintiff would not have been willing to pay the same amount for the Products, or would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff received were worth less than the Products for which she paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

### Defendant

33.     Defendant Kraft Heinz Company a/k/a Kraft Heinz Foods Company is a Pennsylvania corporation.

34.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States, including New York.

35.     Defendant's website for the Products is: https://www.kraftmacandcheese.com/.

## CLASS ALLEGATIONS

36.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

37.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

38.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in New York State at any time during the Class Period (the "New York Subclass").

39.     The Class and New York Subclass shall be referred to collectively throughout the complaint as the Class.

40.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

41.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

42.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.  Whether Defendant are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

    c.  Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d.   Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

43.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

44.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights. Plaintiff has also retained counsel competent that is experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

45.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

46.   <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

11

b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising and omissions to purchase its Products.

47.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members

predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

48.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

49.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

50.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

51.     There is no adequate remedy at law.

52.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

53.     Defendant's improper consumer-oriented conduct—including failing to label and warn that the Products have phthalates—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.  Defendant made its untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

54.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were mislabeled and not healthy and nutritious.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

55.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

56.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

57.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

58.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

60.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.

14

> In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

61.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning Defendant's Products inasmuch as they misrepresent that the Products are healthy and don't list or warn that the Products contain, or may contain, phthalates.

62.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which were mislabeled and not healthy and nutritious.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

63.     Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

64.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

66.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' packaging and labeling.

67.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

68.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

69.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are healthy, nutritious, and safe for consumption.

71.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

72.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

73.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

74.     Defendant knowingly breached the express warranties by including phthalates in the Products sold to Plaintiffs and the Class without properly notifying them of their inclusion in the Products.

75.     Within a reasonable time after they knew or should have known, Defendant's did not change the Products' labels to include phthalates in the ingredient list or place a warning that phthalates might be in the Products.

76. Defendant thereby breached the following state warranty laws:

    a.       Code of Ala. § 7-2-313;

    b.       Alaska Stat. § 45.02.313;

    c.       A.R.S. § 47-2313;

    d.       A.C.A. § 4-2-313;

    e.       Cal. Comm. Code § 2313;

    f.       Colo. Rev. Stat. § 4-2-313;

    g.       Conn. Gen. Stat. § 42a-2-313;

    h.       6 Del. C. § 2-313;

    i.       D.C. Code § 28:2-313;

    j.       Fla. Stat. § 672.313;

    k.       O.C.G.A. § 11-2-313;

    l.       H.R.S. § 490:2-313;

    m.       Idaho Code § 28-2-313;

    n.       810 I.L.C.S. 5/2-313;

    o.       Ind. Code § 26-1-2-313;

    p.       Iowa Code § 554.2313;

    q.       K.S.A. § 84-2-313;

    r.       K.R.S. § 355.2-313;

    s.       11 M.R.S. § 2-313;

    t.       Md. Commercial Law Code Ann. § 2-313;

    u.       106 Mass. Gen. Laws Ann. § 2-313;

    v.       M.C.L.S. § 440.2313;

w. Minn. Stat. § 336.2-313;

x. Miss. Code Ann. § 75-2-313;

y. R.S. Mo. § 400.2-313;

z. Mont. Code Anno. § 30-2-313;

aa. Neb. Rev. Stat. § 2-313;

bb. Nev. Rev. Stat. Ann. § 104.2313;

cc. R.S.A. 382-A:2-313;

dd. N.J. Stat. Ann. § 12A:2-313;

ee. N.M. Stat. Ann. § 55-2-313;

ff. N.Y. U.C.C. Law § 2-313;

gg. N.C. Gen. Stat. § 25-2-313;

hh. N.D. Cent. Code § 41-02-30;

ii. II. O.R.C. Ann. § 1302.26;

jj. 12A Okl. St. § 2-313;

kk. Or. Rev. Stat. § 72-3130;

ll. 13 Pa. Rev. Stat. § 72-3130;

mm. R.I. Gen. Laws § 6A-2-313;

nn. S.C. Code Ann. § 36-2-313;

oo. S.D. Codified Laws, § 57A-2-313;

pp. Tenn. Code Ann. § 47-2-313;

qq. Tex. Bus. & Com. Code § 2.313;

rr. Utah Code Ann. § 70A-2-313;

ss. 9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

77.     As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq*.**
**(On Behalf of Plaintiff and All Class Members)**

78.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

80.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

81.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

82.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

19

83. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

84. Defendant Products failed to conform to the representations made on the container or label as each product contained dangerous phthalates.

85. These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

86. The Products do not conform to Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(On Behalf of Plaintiff and All Class Members)**

87.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.     Defendant concealed and failed to disclose on the Products' packaging and labeling that the material fact the Products contained phthalates, and that the Products were not safe or healthy for consumption.

89.     Defendants had knowledge that the Products contained phthalates, and that the Products were not safe or healthy for consumption.

90.     Defendants had a duty to disclose that the Products contained phthalates, and that the Products were not safe or healthy for consumption.

91.     Defendants had superior knowledge or means of knowledge available to them and knew that Plaintiff and the Class would rely upon the representations and omissions of Defendant regarding the quality of its Products.   Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains phthalates, especially at the point of sale.

92.     Defendant's concealment was material and intentional because people are concerned with what is in the food that they are putting into their bodies, as well as caregivers being concerned with what they are feeding to the children they are responsible for.  Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy.  Defendant knows that if it had not omitted that the Products contained phthalates, and that the Products were not safe or healthy for consumption, then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all) and Defendant wanted to increase sales/profits.

93.     Defendant's concealment misled Plaintiff and the Class as to the true nature of what they were buying and feeding to children.

94.     Defendant fraudulently concealed that the Products contained phthalates and that its Products were not safe or healthy for consumption.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

95.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

96.     Plaintiff, on behalf of herself and consumers nationwide, brings a claim for unjust enrichment.

97.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

98.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the

detriment or impoverishment of, Plaintiff and Class Members and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

99. Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

100. Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

101. Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(c) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(d) Awarding punitive damages;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses;

(f)  Granting such other and further relief as the Court may deem just and proper; and

(g) damages and treble damages.

Dated: July 15, 2021

**THE SULTZER LAW GROUP P.C.**

By:     Jason P. Sultzer /s/
_____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

David C. Magagna Jr., Esq.
Charles E. Schaffer, Esq.
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

*Counsel for Plaintiff and the Class*