353 NORTH CLARK STREET, CHICAGO, ILLINOIS 60654

JENNER&BLOCK LLP

September 14, 2021

Dean N. Panos
Tel +1 312 923-2765
dpanos@jenner.com

**VIA ECF**

The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 920
Central Islip, NY 11722

Re:   *Tarantino v. Kraft Heinz Co.*, Case No. 2:21-cv-4013-JMA-JMW
      Request for Pre-Motion Conference re: Motion to Dismiss

Dear Judge Azrack:

Pursuant to Section IV.B of this Court's standing order, I write on behalf of Defendant Kraft Heinz Company ("Kraft Heinz") to request a pre-motion conference regarding Kraft Heinz's anticipated motion to dismiss this action.

Plaintiff alleges that Kraft Macaroni & Cheese contains chemicals known as "phthalates," which allegedly migrate into the cheese powder during the manufacturing process. Based on her allegation that phthalates are "dangerous and harmful chemicals" (Compl. ¶ 3), Plaintiff alleges that Kraft Heinz deceives consumers by failing to disclose the presence of phthalates on the packaging and by making labeling claims—such as "NO Artificial Flavors," "NO Artificial Preservatives," and "NO Artificial Dyes"—that are misleading in light of the presence of phthalates. Plaintiffs lawsuit is both preempted by federal law and implausible.

At the outset, Plaintiff's lawsuit fails because the FDA specifically permits the presence of phthalates in the food supply and has expressly authorized the use of phthalates in food contact applications. *See* 21 C.F.R. § 178.3740 (permitting the use of phthalates in substances used for "producing, manufacturing, packing, processing, preparing, treating, packaging, transporting, or holding food"). And contrary to Plaintiff's assertion that phthalates are per se unsafe, the FDA has made clear that oral exposure to phthalates—such as DEHP, one of the most common phthalates—is safe at levels *far higher* than those allegedly found in Kraft Macaroni & Cheese.

Plaintiff's allegations regarding the presence of phthalates in Kraft Macaroni & Cheese are based on a 2017 report by the Coalition for Safer Food Processing and Packaging (the "Coalition"), which purported to find phthalates in ten varieties of packaged macaroni and cheese—including Kraft Macaroni & Cheese. *See* Compl. ¶¶ 24-26. That study—which Plaintiff references extensively in her complaint—found that each variety of macaroni and cheese contained between 34 and 218 parts per billion (or 0.034 to 0.218 mg/kg) of phthalates. For perspective, the FDA has concluded that the "tolerable intake" of the phthalate DEHP, based on oral exposure, is approximately 2 to 4 milligrams per day of phthalates in a normal-sized adult. Even if one assumed that the concentration of phthalates found in the cheese powder in Kraft Macaroni & Cheese were

The Honorable Joan M. Azrack
September 14, 2021
Page 2

218 milligrams per kilogram of product (the highest concentration found in the Coalition's study) and that the entire box was made up of cheese powder (as opposed to the pasta that makes up the bulk of the product's weight), a 206-gram box of Kraft Macaroni & Cheese would contain only 0.0449 milligrams of phthalates.  At such trace levels, a consumer would need to eat *hundreds* of servings of Kraft Macaroni & Cheese each day to approach the FDA's "tolerable intake" of the phthalate DEHP.  Plaintiff's assertion that the *de minimis* amount of phthalates present in Kraft Macaroni & Cheese renders the product "unsafe" conflicts with the FDA's determination that phthalates are safe in far higher amounts, and her lawsuit is accordingly preempted by federal law.

To the extent Plaintiff alleges that Kraft Heinz misleads consumers by failing to disclose the presence of phthalates in Kraft Macaroni & Cheese, that theory is also preempted for a separate reason: the FDA has made clear that manufacturers need not disclose the presence of "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food that are not food additives as defined in section 201(s) of the Act."  21 C.F.R. § 101.100(a)(3)(iii).  Here, Plaintiff admits that phthalates are not ingredients or food additives, but are instead "substances that enter the Products from Product packaging and machines used to make the Products."  Compl. ¶ 22.  Plaintiff therefore cannot invoke New York law to require the disclosure of phthalates on the packaging of Kraft Macaroni & Cheese, as doing so would necessarily impose a "requirement for . . . labeling of food . . . . that is not identical to the requirement[s] imposed by federal law."  21 U.S.C. § 343-1(a); *see also In re PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (noting that "state law cannot impose obligations beyond, or different from, what federal law requires").

Plaintiff's fraud-by-omission claim also fails because she cannot plausibly allege that the presence of trace amounts of phthalates is material to reasonable consumers.  Under New York law, a "material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product."  *Bildstein v. MasterCard Int'l, Inc.*, 329 F. Supp. 2d 410, 414 (S.D.NY. 2004) (citations and internal quotation marks omitted).  Although Plaintiff alleges—with little elaboration—that the alleged presence of phthalates in Kraft Macaroni & Cheese was material to her and other reasonable consumers, courts have made clear that the remote risk associated with trace amounts of an allegedly harmful substance is not material to reasonable consumers.  *See, e.g.*, *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (dismissing lawsuit premised on the alleged presence of the herbicide glyphosate in dog food, as the "presence of negligible amounts of glyphosate in a dog food product that [does] not have harmful, 'toxic,' or 'carcinogenic' effects is not likely to affect consumers' decisions in purchasing the product and is thus not material").  And that reasoning is consistent with the holdings of courts around the country, which have made clear that there is "no duty to disclose a non-existent and hypothetical safety risk" like the purported risks associated with trace amounts of phthalates."  *Decker v. Mazda Motor of Am., Inc.*, No. 11-873, 2013 WL 12129281, at *8 (C.D. Cal. Mar. 29, 2013).

Nor does the presence of phthalates render the statements "NO Artificial Flavors," "NO Artificial Preservatives," and "NO Artificial Colors" affirmatively misleading.  Plaintiff does not allege that these statements are false—or, in other words, that Kraft Macaroni & Cheese *does* contain artificial preservatives, flavors, or dyes.  Instead, Plaintiff alleges that these statements "lead[] reasonable consumers to believe the Products are wholesome and healthy and do not

The Honorable Joan M. Azrack
September 14, 2021
Page 3

contain dangerous chemicals like phthalates." Compl. ¶ 15. But courts around the country—including in New York—have made clear that the presence of an allegedly "bad" substance does not prohibit a manufacturer from highlighting a product's positive qualities. For example, many courts have held that the alleged presence of glyphosate did not render the term "natural" misleading, as "a reasonable consumer would not be so absolutist as to require that 'natural' means that there is no glyphosate, even an accidental and innocuous amount, in the Products." *Parks*, 377 F. Supp. 3d at 247; *see also In re Gen. Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (holding that the presence of glyphosate did not render the statement "Made with 100% Natural Whole Grain Oats" misleading, as this statement does not "mean[] that there is no trace glyphosate" in the product "or that a reasonable consumer would so interpret the label").

Here, as in *Parks* and *General Mills*, the purported presence of phthalates has no bearing on whether Kraft Macaroni & Cheese contains artificial flavors, preservatives, or dyes. And while Plaintiff suggests that the "NO Artificial _____" statements contribute to a general perception of healthiness, that does not salvage her claims. To the contrary, courts have repeatedly dismissed similar consumer fraud claims where the plaintiff "alleges that a consumer will read a true statement on a package and will then . . . assume things about the products other than what the statement actually says." *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012); *see also Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. 17-1875, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) ("Where statements or depictions of ingredients on packaging are truthful . . . courts may dismiss claims that those statements or depictions are misleading.").

These flaws—and others—are fatal to Plaintiff's lawsuit. Nonetheless, Kraft Heinz respectfully submits that the Court need not decide *any* of these questions at this stage, as Kraft Heinz anticipates that it will move to transfer this action to the Northern District of Illinois—which would obviate the need for this Court to address the merits of this lawsuit. In light of its forthcoming motion to transfer this action, Kraft Heinz respectfully submits that the Court stay Kraft Heinz's deadline to file a motion to dismiss until thirty days after the Court rules on its motion to transfer. Kraft Heinz has conferred with Plaintiff's counsel, Jason Sultzer, regarding this request, and Mr. Sultzer confirmed that Plaintiff does not oppose Kraft Heinz's request to stay its deadline to file a motion to dismiss pending the disposition of its motion to transfer.

                              Respectfully submitted,

                              /s/ Dean N. Panos
                              Dean N. Panos